## CITY OF ANCHORAGE et al. v. ASHLEY et al.

No. 13016.

United States Court of Appeals Ninth Circuit.

May 14, 1952.

Ralph E. Moody, Anchorage, Alaska, for appellants.

George M. McLaughlin, Anchorage, Alaska, for appellees.

Before DENMAN, Chief Judge, and ORR and POPE, Circuit Judges.

DENMAN, Chief Judge.

This appeal is taken by the City of Anchorage, defendant below, from a judgment granting the motion for summary judgment made by the plaintiffs below, the Ashleys, in their suit to enjoin the City from asserting any lien on the Ashleys' real property, arising from an assessment for a certain sewer improvement. Summary judgment was granted the plaintiffs on the ground that the sewer improvement assessment made by the City was void because of the City Council's failure to comply with the Alaska statutes providing for such assessments.

The City attacks this judgment on the grounds that: (a) the City Council's action in imposing the assessment was a proper compliance with the statutes; and (b) summary judgment was erroneous since the pleadings and affidavits on file put in issue the factual questions whether the Ashleys were estopped to sue by their acquiescence in the improvement or had waived their right to challenge the council's compliance with the statutes by making other and more specific objections to the assessment before the Council.

The statutory provisions involved are the following from Alaska Compiled Laws Annotated 1949:

"16-1-81. Improvements for which assessment authorized: Property benefited: Amount of assessment: Owners' request for improvement. The council may assess against the real property specially benefited by such improvements two thirds of the cost of

laying out, grading, constructing or re- pairing any street, alley or sidewalk, constructing or repairing any sewer or drain * * *. Such costs shall be assessed against the real property specially benefited in proportion to the benefits so received by each tract of land. Provided, however, that no such assessment shall be levied for any improvement unless such improvement be in writing requested of the city council by the owners of at least one half in value of the property to be so specially benefited by such improvement. * * *

"16–1–82. Council to determine necessity of improvements and sufficiency of petition: Findings: Forgery. When such request is presented to the council the same shall be filed and the council shall determine (1) whether the improvement requested is necessary and should be made, (2) whether the request is signed by all the owners of at least one half in value of the property specially benefited by such improvement and shall pass a resolution containing the council's findings on such questions, which findings shall be conclusive * * * *.

"16–1–83. Decision of council as to improvement and assessment. If the council find that the improvement is necessary and that the request has been signed by the owners of at least one half in value of the property to be specially benefited, the council may also decide that any part of the cost of such improvement, not, however, to exceed two-thirds thereof, shall be (the) assessed against the real property so benefited in proportion to the amount of such benefits received, by each tract of property."

By special election on March 27, 1947, the voters of Anchorage authorized the issuance of bonds in the sum of $225,000 for the construction of two trunk sewer lines. On April 20, 1949, the City Council by ordinance authorized sale of these bonds and stated that, as soon as a legal petition from property owners for the construction of sewers abutting their property was filed, the City would levy special assessments against the property specially benefited by such improvement.

Between April 1 and July 1 of 1949, property owners circulated petitions for the improvement and the requisite number of property owners under § 16–1–81 signed, although the plaintiffs did not. On July 1, 1949, the contract for construction of the sewer was let and construction began; but the City Council did not take the prescribed action of reviewing the petitions and finding the improvement to be necessary. On March 1, 1950, when much of the construction was completed, the Council by ordinance found the petitions sufficient and the improvement necessary. On March 2, 1950, the Council by ordinance assessed to each of the lots specially benefited two-thirds of its proportionate share of the improvement cost. This ordinance set a public hearing on the assessments for September 29, 1950, at which the plaintiffs appeared.

■ (a) Although the March 2, 1950 ordinance of the Council recited that "prior resolves" had determined the petitions to be proper and the improvements to be necessary, the evidence fails to show this. Thus, the statutory steps leading to sewer construction were not taken in order. The city says this is not necessary and that so long as there is substantial compliance with the statute sometime prior to collection of the assessment, the statute is satisfied. We, however, find in this statute a very salutary attempt to protect property owners from heavy property assessments based on improvements which the Council has contracted for. Under the Alaska law, two-thirds of the cost can fall on the householder and this may be a heavy burden.

The Ashleys' assessment was $336.77.

To give small householders the only kind of fair treatment in these circumstances, the Alaska legislature in the statutes above cited has provided for petitions for improvement by householders themselves, then council action on the legality of the petitions and the need for improvement, and then a determination whether the cost shall be paid from the general fund, or in

part by the property owners. The statutory scheme clearly contemplates that the decision on the need for the improvement must be made before the improvement is carried out.

By this method before the proposed improvements are made and the money expended on them, the minority householders are given the opportunity to express to the council their views as to why the improvements are not needed. If they prevail the improvements will not be made. It is obvious that if the improvements are made before such a hearing given to the minority protestants, they will have an almost insurmountable burden to overcome. This would be particularly true of their claim that a prevailing high cost of construction made it an improper time to make the improvements, even if the council held against their claim that they were not needed at all. Also after the improvements are installed there may be insufficient moneys in the city's general fund which would be liable for the work ordered by the city, in which case the council would be the less likely to give a fair consideration to the protestants' arguments. Cf. In re Ketchikan Delinquent Tax Roll, 9 Cir., 293 F. 577 where a similar result was reached on substantially the same kind of statute.

■ (b) If material fact issues were raised on the motion for summary judgment, summary judgment would be erroneous. The City says that it can prove the plaintiffs are estopped to sue. Its contention is that they stood by and watched the sewer construction go on, well knowing that their property would be specially assessed.

■ We do not agree that the case shows the plaintiffs had such knowledge. The City points to the Notice of Election which preceded the special election to authorize this construction. It said:

"Shall the City of Anchorage * * issue General Obligation bonds of said City in the sum not to exceed $225,000 in payment of the costs thereof, * * and pledge the proceeds of any special assessment *which the City may by law assess* and collect for such special local improvements, * * *." (Emphasis ours.)

This language is no more specific than the statute itself which authorizes such improvements. The statute merely says "the council *may* assess"; and such language in the election notice does not impart knowledge to the Ashleys that their property *is* going to be assessed.

On September 29, 1950, long after the council made its contract and the improvements were completed, a hearing before the council was called pursuant to § 16–1–84. The purpose of that meeting is stated in § 16–1–85:

"Hearing of objections: Continuances: Settlement and certification of assessment roll. At the time of such hearing all persons concerned shall have a right to present their objections if any they have to the assessment or any part thereof and to point out errors and inequalities if any exist and submit such reasons for amendments and corrections as they may have and such hearing may be continued from time to time as the council shall decide. After the council have heard all objections and suggestions they shall correct all errors, if any, which they find to exist in the assessment roll as originally made, and when the same is finally settled the mayor shall sign the assessment roll certifying that it is the assessment roll as finally settled by the city council."

The objections coming at this time relate solely to the amount of assessment, valuations or measurement of property, ownership of the property charged, and the like for the purpose of fixing the amount of the assessment roll. They do not concern the objection of the minority to the project as a whole.

At that hearing the plaintiffs appeared in objection to their assessment, and said:

"I asked that the Council assess a general tax and the whole sewer improvement be taken out of the General Tax Fund."

This was the only objection made by the Ashleys at that time and the City says this

means the plaintiffs waived the other specific issues that they raise in this injunction proceeding.

We do not agree. A statement of the limited objection to the assessment roll following the completion of the work is not a waiver of other objection to be made only at a meeting of the Council prior to the making of the contract for work.

The judgment of the district court is affirmed.